IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ACLYS INTERNATIONAL, LLC, a Utah Limited Liability Corporation,<br><br>                Plaintiff,<br><br>vs.<br><br>EQUIFAX, INC., a Georgia Corporation,<br><br>                Defendant. | MEMORANDUM DECISION and ORDER<br><br><br><br>Case No. 2:08-cv-00954 |

      Aclys International, LLC, (Aclys) brought negligence and negligent misrepresentation claims against Equifax, Inc. (Equifax), a credit reporting agency, because of omissions on a credit report. Equifax moves to dismiss, arguing that Aclys's claim is barred by the economic loss rule. The court agrees and GRANTS Equifax's motion for judgment on the pleadings.

BACKGROUND

      In November 2005, Aclys employed First Credit Corporation (First Credit) to investigate some potential business partners, including Amro Bocelli. As part of its background check, First Credit obtained a credit report from Equifax on Mr. Bocelli. The credit report showed that Mr. Bocelli's only delinquent payments were a few old medical collections. In part because of Equifax's credit report, Aclys provided Mr. Amro, his business partner, and related entities with over five million dollars in purchase-order financing. After Mr. Bocelli defaulted on the loans

and absconded, Aclys discovered that Mr. Bocelli had a $236,047.67 default judgment against him in the State of Wisconsin and a $157,840.22 judgment against him in California for contract fraud, both entered in 2003. Aclys has obtained default judgments in state court against Mr. Bocelli and First Credit, but has been unable to collect. It now brings suit against Equifax. Aclys argues that Equifax did not exercise reasonable care in preparing the credit report that it provided to First Credit Corporation.

ANALYSIS

Equifax moves for judgment on the pleadings, arguing that Aclys' claims are barred by the economic loss rule. Aclys contends that the economic loss rule does not bar negligent misrepresentation claims. Aclys further argues that the economic loss rule is not applicable to this case because there is no contract between Aclys and Equifax, Equifax has a common-law duty to provide accurate information, and Equifax had an independent duty under the Fair Credit Reporting Act. Finally, Aclys claims that it did not suffer an economic loss so the economic loss rule does not bar recovery.

Motion for Judgment on the Pleadings Standard

"After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In order to survive a motion for judgment on the pleadings, "a complaint must include enough facts to state a claim to relief that is plausible on its face." Corder v. Lewis Palmer Sch. Dist. No. 38, 566 F.3d 1219, 1223 (10th Cir. 2009) (internal quotations omitted). The court will only grant a motion for judgment on the pleadings "when it appears that the plaintiff can prove no set of facts in support of the claims that would

entitle the plaintiff for relief." Fernandez v. Mora San Mugyek Elec. Coop., 462 F.3d 1244, 1250 (10th Cir. 2006).

The Economic Loss Rule

"The economic loss rule prevents a party from claiming economic damages 'in negligence absent physical property damage or bodily injury.'" Fennell v. Green, 2003 UT App 291, ¶ 13, 77 P.3d 339 (quoting SME Idus., Inc. v. Thompson, Ventulett, Stainback & Assocs., 2001 UT 54, ¶ 32, 28 P.3d 669); see also Davencourt at Pilgrims Landing Homeowners Association v. Davencourt at Pilgrims Landing, LC, 2009 UT 65, ¶ 18. Economic loss includes "consequential loss of profits without any claim of personal injury or damage to other property." SME Idus., 2001 UT 54, ¶ 32. "In essence, the economic loss rule marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care." Sunridge Dev. Corp. v. RB&G Eng'g, Inc., 2010 UT 6, ¶ 28 (Utah 2010) (quotations omitted).

When a dispute arises because a purchased product does not meet expectations "the claim pertains to the quality of the product as measured by the buyer's and user's expectations– expectations which emanate solely from the purchase transaction." American Towers Owners Ass'n v. CCI Mech., 930 P.2d 1182, 1192 (Utah 1996). The economic loss rule applies regardless of whether the purchaser has a direct contractual relationship with the creator of the product. The purpose for the economic loss rule is "to prevent the imposition of 'economic expectations' on non-contracting parties." SME Indus., 2001 UT 54, ¶ 32.

While the purpose of the economic loss rule is to prevent contracting parties from receiving more than the benefit of their bargain, "cases from the Utah Supreme Court have also applied the economic loss rule to parties who were not parties to a contract." Hafen v. Strebeck, 338 F.Supp. 2d 1257, 1266 (D. Utah 2004). In Hafen, the parties never reached an agreement so no contractual duties arose. Id. at 1267. The court held that the economic loss rule barred the plaintiffs' claim for negligent misrepresentation because commercial entities negotiating a contract owe one another only a duty of honesty, and so no independent duty of care arose. Id. at 1265-1267.

Negligent Misrepresentation and the Economic Loss Rule

"[A] party injured by reasonable reliance upon a second party's careless or negligent misrepresentation of a material fact may recover damages resulting from that injury when the second party had a pecuniary interest in the transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact." Price-Orem Investment Co. v. Rollins, Brown and Gunnell, Inc., 713 P.2d 55, 59 (Utah 1986) (allowing claim of negligent misrepresentation by builder against surveyor even though there was no privity of contract). Section 552 of the Restatement, Second, Torts specifies that an individual can be liable for negligent misrepresentation for "suppl[ying] false information for the guidance of others in their business transactions." But in the case of a purely economic loss, "the courts have found it necessary to adopt a more restricted rule of liability, because of the extent to which misinformation may be, and may be expected to be, circulated, and the magnitude of the losses which may follow from reliance upon it." Restatement (Second) Torts § 552 cmt. a.

Negligent misrepresentation liability is limited "to cases in which [the supplier of information] manifests an intent to supply the information for the sort of use in which the plaintiff's loss occurs." Id.

The Utah Supreme Court has not ruled on whether the economic loss rule applies to claims for negligent misrepresentation. See Smith v. Frandsen, 2004 UT 55, ¶ 13 n.2, 94 P.3d 919. But it appears that negligent misrepresentation falls outside the economic loss rule only when the party making the misrepresentation owes an independent duty of care. Grynberg v. Questar Pipeline Co., 2003 UT 8, P51 (Utah 2003) (holding that "the economic loss rule does not bar tort claims when those tort claims are based on a duty independent of those found in the contract"); see also Anapoell v. Am. Express Bus. Fin. Corp., No. 2:07-cv-198, 2007 U.S. Dist. LEXIS 88182 at * 22 (November 30, 2007). The Utah Supreme Court has found an independent duty of care for surveyors, real estate agents but not for developers of real estate or design professionals. Davencourt, 2009 UT 64, ¶ 29 (no independent duty for developers); Yazd v. Woodside Homes Corp., 2006 UT 47, ¶ 35, 143 P.3d 283 (independent duty of care for contractor-seller to disclose information about property); SME Indus., 2001 UT 54, ¶ 37 (no independent duty for design professionals); Hermansen v. Tasulis, 2002 UT 52, ¶ 23, 48 P.3d 235 (independent duty for real estate agents to disclose "known material defects"); Price-Orem, 713 P.2d at 59 (independent duty for surveyors to those who will foreseeably rely on their work).

In determining whether a particular type of professional owes an independent duty, Utah courts consider whether the professional is licensed under a statute that creates such a duty, whether the professional has a direct relationship with the party who relies on the negligent

misrepresentation, and whether "the plaintiffs could have avoided their economic loss with contracts." West v. Inter-Financial, Inc., 2006 UT App 222, ¶¶ 18-27, 139 P.3d 1059. Regardless of whether an independent duty exists, a claim for negligent misrepresentation can only arise if the information providers "are aware that third parties may reasonably rely on their work."  Id. ¶ 27.

Aclys' Economic Loss

Aclys suffered an economic loss.  The Utah Supreme Court has repeatedly stated that economic loss includes "damages for inadequate value, costs of repair and replacement of the defective product, or consequential loss of profits–without any claim of personal injury or damage to other property . . . as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold."  See, e.g., SME Idus., 2001 UT 54, ¶ 32.  Because Aclys seeks damages for purely economic losses sustained as a consequence of relying on the Equifax credit report, its loss falls squarely within the economic loss rule.  Accordingly, Aclys may only assert a claim for negligent misrepresentation if it can establish that Equifax owed it an independent duty of care.  Aclys alleges that Equifax has both a common-law duty and a statutory duty imposed by the Fair Credit Reporting Act (FCRA) to provide thorough and accurate credit reports.

Equifax's Duty to Aclys under FCRA

FCRA does not impose any duty on Equifax relevant to this case.  Congress enacted FCRA "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner

<u>which is fair and equitable to the consumer</u>, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. § 1681(b) (emphasis added). Aclys obtained a consumer credit report on Mr. Bocelli for the purpose of extending millions of dollars of purchase order financing, not consumer financing. Moreover, FCRA was enacted to protect consumers from credit reporting agencies that disseminated inaccurate credit information about them, not businesses such as Aclys that use credit reports to make decisions about whether to issue credit.

Even if FCRA were applicable to the parties in this case, FCRA does not require credit reporting agencies to include all relevant information about an individual, only that the information present on a credit report be accurate. <u>Davis v. Equifax Info. Servs LLC</u>, 346 F.Supp. 2d 1164, 1172. In this case, Aclys has made no allegation that the information included on Mr. Bocelli's Equifax credit report is incorrect. Rather, they claim only that some information was omitted. Equifax's statutory duty to report information does not extend to including all available credit information on an individual. Further, Equifax's statutory duty is not of the same kind imposed by the licensing statutes for real estate appraisers and real estate agents because it does not impose on Equifax a duty of care toward credit report purchasers or a duty of care to include all available credit information on a consumer.

<u>Equifax's Common Law Duty to Aclys</u>

For Equifax to have a duty of care toward Aclys and therefore incur liabilty for negligent misrepresentation, Aclys' loss must have been foreseeable by Equifax when it issued the credit report on Mr. Bocelli to First Credit.

> A user of commercial information cannot reasonably expect its maker to have undertaken to satisfy [the duty of care] unless the terms of the obligation were known to him. Rather, one who relies upon the information in connection with a commercial transaction may reasonably expect to hold the maker to a duty of care only in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended to supply it for that purpose.

Restatement (Second) Torts § 552 cmt. a. The question of whether an individual owes a duty of care is a legal issue. Normandeau v. Hanson Equipment, Inc., 2009 UT 44 ¶ 18, 215 P.3d 152. "A court determines whether a duty exists by analyzing the legal relationship between the parties, the foreseeability of the injury, the likelihood of injury, public policy as to which party can best bear the loss occasioned by the injury, and other general policy considerations." Id. ¶ 19. If an information provider does not owe the recipient of the information a duty of care, the information provider also does not have the independent duty of care required to save the claim from invalidity under the economic loss rule. Hafen v. Strebeck, 338 F.Supp. 2d at 1266. Even if a duty of care exists, the economic loss rule may still bar the claim if recovery allows a stranger to a contract to receive more than the contract provides to the contracting parties. See SME Indus., 2001 UT 54, ¶ 32.

  Equifax did not have a direct relationship with Aclys and therefore Equifax did not make direct representations about the scope of the credit report to Aclys. Equifax was not manifestly aware that Aclys would rely on the credit report to lend over five million dollars in non-consumer credit, and did not intend to supply the credit report for that purpose. Moreover, public policy weighs against finding that Equifax owed Aclys a duty of care. Imposing a duty of care on Equifax to provide thorough information to business owners would be tantamount to making Equifax the insurer of bad debts whenever there is an omission on a credit report. For those

reasons, the court concludes that Equifax did not owe a duty of care to Aclys.

Further, even if Equifax did have a duty of care, Aclys' claim is still barred by the economic loss doctrine because Equifax had no duty independent of the contract between Equifax and First Credit. Equifax made direct representations only to First Credit, not to Aclys. A contract governed the relationship between Equifax and First Credit.[1] If the contract between Equifax and First Credit specified that no judgments would be omitted it would be First Credit, not Aclys, that would have a cause of action against Equifax under the contract. On the other hand, if the contract specified that not all judgments against Mr. Bocelli were necessarily present on the credit report, the court should not impose on Equifax a higher duty of care toward Aclys than was present in the contract that governed Equifax's duties to First Credit. Indeed, the purpose of the economic loss doctrine is to avoid imposing the economic expectations of strangers to the contract, like Aclys, on contracting parties. Therefore, the economic loss doctrine bars Aclys' claim against Equifax.

CONCLUSION

The court GRANTS Equifax's motion for judgment on the pleadings (Docket No. 23) because Equifax owed Aclys no duty of care and, in any event, Aclys' claim is barred by the economic loss doctrine.

---

[1] The court has not seen the contract between First Credit and Equifax, but during oral argument on this matter, counsel for Aclys asserted that such a contract exists.

DATED this   5   day of May, 2010.

                                    BY THE COURT:

                                    TENA CAMPBELL
                                    Chief Judge